We will hear the next case, Halvorssen v. Simpson. Okay. Mr. Halvorssen, I'm Howard Foster for the appellant Thor Halvorssen. Mr. Halvorssen was viciously smeared in retaliation for reporting crimes to Federal officials. It turns out that this was part of a pattern of such activities by the two of the major defendants, Mr. Simpson and Mr. Fritsch, through their company Fusion GPS. May I just ask you, so I'm clear on this, what is the Ricoh Enterprise? Fusion GPS. It's a Delaware — No, I understand. I just didn't see that you specifically identified it as the enterprise. So it's Fusion GPS that's your enterprise. Right. That's the enterprise. It's stated in the complaint, and it's a Delaware entity. They had additionally committed similar predicate acts against other people. We've described them in great detail in the complaint to show a pattern of these violations. The district court should not have dismissed the case with prejudice for failure to state a claim because a claim was stated if the predicate acts that we alleged are taken into account, in particular, this 2017 post against Mr. Halverson, perpetrated by co-conspirator Kenneth Silverstein, with the express permission or direction of Mr. Simpson and Mr. Fritsch through the Ricoh Enterprise. So that posting comes like two years after the dossier was compiled. I mean, what is there — what allegations are there that that was related to the ongoing scheme? Well, that the scheme — the objective of the scheme was to get Mr. Halverson fired by his foundation. It had not occurred. So they continued. He was in the news again. They decided to go after him again and attack him in 2017. What's the — what are the facts that allege a connection between GPS and Silverstein for that? Silverstein was part of the conspiracy to do the 2017 blog post. That's expressly stated in the complaint. He did it at the direction of Simpson and Fritsch to attack Halverson. He did it in 2017. It is stated three different times in the complaint that that was the reason and that was how it happened. He wasn't acting alone. He was acting pursuant to the same conspiracy that had created the dossier. He also, in that same 2017 blog post, attacked Mr. Browder, the other — one of the other targets of this enterprise. So the district court should have considered that as part of its pattern analysis. Taken as a whole, if you look at that, then we have about a three-year pattern of 2017. The district court was just simply erred in cutting off the 2017 post from consideration in light of all the facts that are alleged. It was done by the same people with the same co-conspirator Silverstein. It was done through his blog. It also attacked another one, Browder. And it meets all the criteria for relatedness that this Court and the Supreme Court in H.J. v. Northwestern would require. The district court also erred in its analysis that Mr. Browder, the scheme against him couldn't be considered because some of the defendants didn't commit that particular predicate act, those against Browder. But Simpson and Fritsch did commit those three victims. At the very minimum, there is a pattern against those three victims. They're all related. They were all committed by, according to the complaint, a conspiracy between Simpson and Fritsch and the — and the Venezuelans for two of the three schemes. May I be clear on some things that are in the record? You concede that this is a closed-end I do. Yes. We concede that this is a closed-end pattern of racketeering activity. Three years is enough. And we've pled three years. That should — that does satisfy all of the cases this Court has decided on the length, the duration of the predicate acts. I'm asking because it wasn't clear to me why you thought of it as closed-end. I thought your pleading suggested that you thought part of GPS's business, as you're saying, is to hold itself out as if you need investigations that, you know, concoct evidence on people. We're — we're the place that'll do it. Oh, sure. I mean, I'm not saying — But why isn't that open-ended? Well, open-ended would mean that we believe that there are going to be more predicate acts against our clients. Thor Halverson, I just can't stand here and say that today. That may well be. It could have been pled as an open pattern also, I suppose, because I think, as Your Honor is suggesting, it's the regular way that it does business. That's your allegation. Yeah. May I — may I ask one other question with respect to relatedness? Now, because this is a legitimate business, we've indicated that you have to look to purposes, results, participants, victims, or methods of commission. Yes. In your three incidents, you have different victims, so we don't have that. How do you — how do you show relatedness on any of the other factors we've deemed determinative — purposes, results, participants, methods of commission? Purposes? The purpose is to harm all these victims financially. Destroy Halverson by getting him fired by his foundation. Harm Browder by getting people to — to leave his hedge fund. Harm Mr. Boyd by stealing his laptop so he can't earn any more money and earn — earn his living as a blogger. So they're all related in their methods of commission and purposes. I had thought that the — the uniform purpose you were asserting was to harm reputations. Well, no. We're trying to — it's retaliate against people who have made claims to Federal officials, but it — we're not — we're not claiming harm to reputations. We're saying that they've all lost actual money, damages. Halverson has lost millions of dollars because of a business deal that went south. All right. Listening to you then, am I right that the results are different rather than similar? The results are they've all been harmed financially. That's pretty broad, isn't it? I mean, I'm not — I'm not sure that you could argue that that weighed strongly in your favor. Well, they — they also have been — suffered, I understand it, harm to their reputations. That's one — another common factor. Right. You just said that. Yeah. I — I — we didn't — we didn't plead that, but they're all being — the statute says the goal has to be to harm people in their employment or livelihood. 1513e, that's what we're saying, though. Here, the results were, in each case, to harm each person in his — in his business. Halverson — What about participants in methods of commission? Well, these are the same participants in methods of commission. The — Who are the same participants here, the common participants in each of the three schemes? Simpson and Fritch. Okay. And the methods of commission, how are they similar? They are retaliating against people. That's — that's what they did. What is the method by which they did it? They published material that was meant to destroy their livelihoods on the Internet. False material. False material on the Internet in each of these cases. Okay. I just wanted to make sure I understood your — Yes. — your theory here. Yes. I'm — where in the complaint does it say that Simpson and Fritch had anything to do with the 2017 article? The 2017 article. That says on page — on paragraph 46, it says — Okay. That says Silverstein continued to attack Halverson online. Right. And he lied to the U.S. Senate. What does that have to do with Simpson and Fritch? Right. And on paragraph 73 and 74, it says that all of those — that Silverstein's actions were undertaken by direction from Simpson and Fritch. Simpson and —  What are the facts that are alleged that suggest any link between Simpson and Fritch and the 2017 article — the 2017 attack? Because it was — he also attacked Browder in the same — in the same blog post. He was — he was working at the behest of Simpson and Fritch. Browder was one of their other targets. I don't think your complaint says that. All right. My — my complaint says on paragraph 46 that the 2017 blog post also attacked Browder. It was undertaken, we strongly believe, at the direction of Simpson and Fritch. It says — It doesn't say that part. It says — It doesn't say that it was taken at the direction of Simpson and Fritch. Okay. That is what we believe strongly. We — Well, the fact that you believe it strongly — Okay. If I could — It's not particularly helpful. But — but let — you have some time for rebuttal. Okay. Let's hear from the other side, and then you'll get a chance to respond. Okay. Thank you. Thank you, Judge. May it please the Court, my name is Joshua Levy. I'm here on behalf of appellee defendants Glenn Simpson and Peter Fritch. I'm going to speak for about five minutes and then turn it over to counsel for co-appellee Mr. D'Agostino. This Court should affirm the lower court's dismissal with prejudice of appellant plaintiff for a single count of a RICO conspiracy. And I want to touch on two independent grounds for that dismissal, the lack of continuity and the absence of proximate cause. On continuity, appellant plaintiff has conceded that there is no open-ended — open-ended continuity here. And as to close-ended continuity, he has also conceded that a mere 11-month scheme from establish close-ended continuity. But I think he just argued that he thinks he's alleged a three-year scheme. He's alleging a three-year scheme by trying to bootstrap a stray allegation from October 2017 in paragraph 46 to a conspiracy that was abandoned two years prior in October of 2015, according to the complaint. Not what's in the briefs, not what's in the oral argument, but what's in the complaint. So in 46, the argument is — the allegation is that Silverstein publishes this article that attacks both Halverson and Browder. Can we not draw an inference from that that that was at the behest of your clients? Not under Twombly or Iqbal, Your Honor. The conspiracy needs to be pleaded there specifically, and it is not. This is no different than the parallel conduct of the Ilex in Twombly. Mr. Silverstein was self-motivated to attack Mr. Halverson in the article that is attached to the complaint. Mr. Silverstein is an admitted foe of Mr. Halverson. He's a chavista. I understand all this, but we have to view the complaint in the light most favorable to the plaintiff on motion to dismiss. He starts with 2013 with Previzan retaining Fusion GPS to assemble a dossier on Browder. And he's talking about activity that's going on through 2016 with the promotion of the anti-Browder documentary. So if we, for purposes of a motion to dismiss, credit that, why doesn't he give us a three-year span? The Browder scheme is unrelated, Your Honor. Well, that's a different question. Now, if you want to argue to us why the district court was right about that, but if I understood the plaintiff correctly, he's basically saying that the Enterprise GPS was in the business, among other things, of preparing phony dossiers if you wanted to smear somebody you didn't like. I understand that you dispute that characterization, but accepting it for purposes of the motion to dismiss, why doesn't Browder — Browder's just one more example of GPS doing that. The Browder scheme is not pleaded with the specificity required by Twombly-Nickball as to the timing. There's no specific date regarding the end date or the middle date for these alleged attacks on Mr. Browder. It just simply says 2015-2016. It does not have a specific date. It does not meet the requirements under the Supreme Court's test for Twombly-Nickball. Sotomayor, that's a different question from relatedness. You keep moving to different questions. Assume for a moment that there — we don't have the specificity problem, that we're just focusing on relatedness. Why is the Browder series of allegations not sufficiently related to the other two? Because the purpose is different, the modes are different, and there's no alleged term for them. The purpose is to smear. The motive is by creating false information, or the — not the motive. The means is by creating false information. Why isn't that enough? The — there's no allegation of a publication for Mr. Boyd's scheme or Mr. Browder's scheme. There's no allegation of harm specifically to Mr. Browder or to Mr. Boyd in those schemes either. In that way, they are both unrelated. And the purpose of the Halverson scheme, so to speak, was to affect the outcome of a board decision on a transaction. There's no such purpose here with Mr. Browder, where Mr. Browder was allegedly attacked because of a lawsuit. I haven't talked about proximate cause, which is an independent ground, and I only have five seconds left. Roberts. You can take a minute or so. I appreciate that. Thank you, Your Honors. I want to make sure I've answered the Court's questions, though. On proximate cause, the Court's test under proximate cause for RICO under Empire Merchants is that there be a direct relationship between the alleged plaintiff's injury under RICO and the alleged pattern of racketeering activity. And here, there is no direct relationship. Here, the alleged injury to the plaintiff is the denial of a prospective contract from Social Impact Capital, a venture capital firm, which is alleged to have no relationship to the alleged racketeering activity. And independently ---- Well, the allegation is that the harm to his reputation, when he was smeared, he lost this opportunity. Reputation ---- Why isn't that be a why wouldn't that be a proximate cause? Number one, reputation is not a cognizable harm under RICO under this Court's Kim decision. No, but it's the the the loss of reputation, the smearing of him, results in a concrete loss. That is, he lost this business opportunity. That's the allegation. But the Court says that you need to look only at the first step of causation under Empire Merchants in the hemi-plurality of the Supreme Court, and the first step is Social Capital denying the contract. Whether the harm was foreseeable is no longer the test under RICO. And so because of this unique test that this Court has found for RICO proximate cause, the complaint fails. Thank you. We'll hear from your colleague. Good morning. May it please the Court, I'm Gary Malone, representing Defendant Appellee Francisco D'Agostino-Casado. Your Honors, on page 1 of his reply brief, Halverson states that the crux of this appeal is Kenneth Silverstein's connection to the alleged RICO conspiracy. And he's right, because his appeal is totally dependent on his establishing that a RICO conspiracy involving Mr. Silverstein has been adequately pled and has not been. Your Honors, counsel for Mr. Halverson tried to argue, well, the complaint does allege a conspiracy for the — involving the October 2017 blog post. And he cites paragraphs 73 and 74, saying that in those paragraphs it is alleged that Mr. Simpson and Mr. Fritch directed Mr. Silverstein to do this October 2017 blog post. Well, Your Honors, counsel is simply wrong. We read paragraph 73 and 74. They don't mention Mr. Silverstein. They don't even mention the October 2017 blog post. They don't say Simpson and Fritch directed Mr. Silverstein at all. All there is, is a conclusory allegation saying that Simpson and Fritch are responsible for everything that occurred through 2017. That's not a factual allegation, Your Honor. And also on page 5 of the reply brief, Mr. Halverson argues that he is asking this court to construe the 2017 blog post as part of the original conspiracy that he says was formed in 2015. Now, let's think about what he's actually asking this court to do. He's asking this court to read the complaint as alleging that in September 2015, Mr. Silverstein agreed to engage in conduct that encompassed not just doing a profile in 2015, but conduct that encompassed attacking Mr. Halverson years in the future based on random comments that Mr. Halverson might make at any point in the future. Your Honors, not only is that implausible, it's also contradictory of what is actually alleged in the complaint. The only factual allegations in the complaint about the scope of the alleged conspiracy to which Mr. Silverstein agreed are allegations that in 2015, Defendant Simpson and Fritch asked Silverstein if he would write a devastating profile of Halverson and publish it online. The complaint then alleges in paragraph 32 that Silverstein agreed to do the profile. And that's it. That's all the complaint alleges Mr. Silverstein actually agreed to do. There's no allegation that there was an agreement to engage in continuing smearing. That's the point. Not at all, Your Honors. There's no allegation that Mr. Silverstein agreed that he would go on a never-ending mission and every few years appear and attack Mr. Halverson, that he would, in effect, be an inspector-javert to Mr. Halverson's Jean Valjean, and that he would hound him. There's no such allegation. There's simply an allegation that he agreed to do one thing, namely publish a profile, which he did in October 2015. That's when he completed everything he agreed to do. And that's why also Mr. Halverson's argument that, well, an agreement to engage in a conspiracy doesn't really end until you achieve the objective. Well, the only objective that is alleged that Mr. Silverstein agreed to do is to publish a profile in 2015, which he did. And because there's no sufficient allegation here of a conspiracy involving Mr. Silverstein, his RICO claim has to be dismissed. This Court, Your Honors, in U.S. v. Pisonia at 577 F. 3rd, 455, 464, stated that a RICO conspiracy is never simply an agreement to commit specified predicate acts. It is an agreement to conduct or to participate in the conduct of a charged enterprise's affairs through a pattern of racketeering. Here there's no factual allegation that Mr. Silverstein agreed to a pattern of racketeering. There's no factual allegation that would give rise to such an inference. And because of that defect, there's also a defect in the allegations with respect to my client, Mr. D'Agostino. On page 17 of the reply brief, Halverson concedes that according to the allegations of the complaint, the conspiracy to commit a pattern of racketeering did not occur until D'Agostino retained Simpson and Fritch to retaliate against Halverson in 2015. Yet the only factual allegations about this alleged conspiracy are that D'Agostino agreed that Simpson and Fritch would enlist a friendly journalist to publish a profile of Mr. Halverson's online. There's no allegation here that Mr. D'Agostino agreed to anything that could be considered a pattern of racketeering in 2015, which is when he says you have to look at the agreement. Your Honors, there's simply no RICO conspiracy properly alleged here. Judge Vitaliano was entirely correct when he said that the October 2017 blog post is not connected in any way with the other allegations of the complaint. Therefore, the decision below should be affirmed. Thank you. We'll hear the rebuttal. A couple of very key points. Yeah. On this point that counsel makes, it's a fair point. The allegation in paragraph 32 is that Silverstein was engaged to publish a devastating profile. There's nothing about an ongoing effort to smear the client. And he published the article in 2015. Right. And, Your Honor, it also says he was engaged to publish that. And he also, it says, the conspiracy involved him following up. He continued to follow up on blog posts afterwards. It says that in the complaint at Page. But where does it say that he was engaged to follow up? Simpson, on paragraph 37. Simpson with Silverstein, excuse me, with Simpson and Fritch's approval, then amplified the false allegation on Facebook. Silverstein added specificity and detail to the false allegations, including that Halverson had been Facebook allegations. They were posted in 2015. Right. I know, Judge. And then on paragraph 46, it says Simpson has continued to attack Halverson online on October 26th, 2017. He stated in his blog that Halverson had lied to the U.S. Senate. The same blog post also attacked William Browder as a fraud. This is him stating that the conspiracy continued, that Silverstein was acting in that situation at the behest of Simpson and Fritch. But now we're focusing on Mr. D'Agostino, correct? D'Agostino says that he didn't. Mr. D'Agostino's counsel said all he did was enter into the 2015 conspiracy, and he didn't agree to do the stuff in 2017. When you deal with the alleged conspiracy, you say it's a conspiracy — it's a racketeering conspiracy. Yes. It's a conspiracy to use GPS as the enterprise through which to commit racketeering activities, right? Correct. Is that the thrust of it? Absolutely correct. What facts do you have that Mr. D'Agostino was entering into that conspiracy, which would involve more than smearing your client, Mr. Halverson? See, I understand that you're saying GPS is in the business of doing that, and that's your basis for suing Mr. Simpson and Mr. Fritch's defendants. But how do you bring Mr. D'Agostino into that charged conspiracy? He was on the phone call in 2015 which hired Simpson and Fritch to do that. I have to deal with counsel's argument that you can't just join in a scheme to commit a predicate, and that makes you a conspirator in the entire racketeering scheme. He — you can join — counsel was wrong about how you join a RICO conspiracy. You don't have to say, I agree to predicates 1, 2, and 3. All you have to do is agree to the overall criminal endeavor. When Mr. — Yes, the overall criminal endeavor is to — Retain — — operate a business. No. That all — well, I'm sorry, but that's what I understood to support the continuity element of your — of your racketeering enterprise. The overall criminal endeavor was to retaliate against Mr. Halverson. That was the phone call. That's what that was about. That's how he — Of the racketeering enterprise? That's — that is the overall purpose of it? The overall purpose of the — there's only one enterprise here. It's Fusion GPS. That's how — That's correct. — I started asking you questions yesterday. Yes. He — Simpson and Fritch, however, were engaged in a racketeering scheme through that enterprise. The racketeering scheme was to retaliate against Halverson. They — I thought it was to retaliate against anybody who somebody would hire GPS to create a false dossier on. No? We alleged in this complaint that there were three separate schemes, one against Halverson, one against Boyd, and one against Browder. That's — What's your predicate crime here? 1513e and f. That's the retaliation statute. So we're saying that there's a case — Retaliation for? Reporting crimes to a Federal official. Okay. And we're saying, yes, they have — You've got one predicate with respect to Mr. Halverson. Right. Okay. We do. And my suggestion to you in asking you about Mr. D'Agostino is, what evidence is there that he agreed to anything more than that predicate? He also agreed to the commission of the retaliation scheme against Boyd, a separate predicate act. And the allegations pertinent to that are, where will I find those? Those were — Mr. D'Agostino agreeing to that. D'Agostino and the Venezuelans hired Fusion GPS in 2014 to go and attack, to begin their attacking of Boyd. They visited Simpson and Fritsch. I'm seeing where the Venezuelans are charged with that. How about Mr. D'Agostino? He's one of the Venezuelans. D'Agostino is a Venezuelan who lives in New York. And he personally met with Simpson and Fritsch in Caracas in July 2015 — 2014, pardon me, where they hatched the scheme to retaliate against Boyd. I don't think you complete a charge against somebody by saying the Venezuelans. And I'm supposed to know — I didn't see that you used that as a defined term. Did I miss that? So that whenever it says the Venezuelans, you are saying Mr. D'Agostino? Right. That is correct. And so I am saying that. He is one of the Venezuelan defendants in this case. All right. We have your argument. We'll reserve the decision. Okay. If I could just — You're way over. Thank you. All right. Thank you. We'll hear the —